IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BARON FINANCIAL CORPORATION,** | * | |
| **Plaintiff** | * | |
| | | Civil Action No.: MJG 03CV 168 |
| v. | * | |
| **ERN, LLC** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY TO
DEFENDANT'S COUNTERCLAIM**

Plaintiff, Baron Financial Corporation ("Baron"), by its attorneys, David B. Goldstein, Brooke Schumm, III, and Daneker, McIntire, Schumm, Prince, Goldstein, Manning & Widmann, P.C., hereby replies to the Counterclaim of ERN, LLC ("ERN") for Indemnification and Affirmative Relief, stating as follows:

**REPLY TO FACTS**

1. Plaintiff denies the allegations contained in paragraph 31 [1].

2. Paragraph 32 contains only legal conclusions to which no response is required, but to the extent that a response is required, Plaintiff denies the allegations contained in paragraph 32 because Defendant's characterization of how the industry functions is inaccurate and incomplete.

3. Plaintiff denies the allegations contained in paragraph 33 because Defendant's characterization of the industry set forth in paragraph 33 is inaccurate and incomplete, and because Defendant's use of certain words and phrases is vague and ambiguous.

---

[1] The Defendant's Counterclaim begins with paragraph 31.

4. Plaintiff denies the allegations contained in paragraph 34 because Defendant's characterization of the history of the parties' relationship and the settlement concluding Civil Action No. MJG-02-CV-1868 set forth in paragraph 34 is inaccurate and incomplete. Plaintiff admits that Samuel Buchbinder ("Buchbinder") was a member owner of ERN, LLC. The Memorandum of Understanding Re: Settlement Agreement ("MOU") attached as Exhibit 1 to the Complaint, and the Rider to Memorandum of Understanding Re: Settlement Agreement ("Rider") attached as Exhibit 2 to the Complaint speak for themselves and are adopted by reference. The MOU and Rider were agreements reached in connection with the settlement of the litigation, captioned Michelle Trading Company v. Rony Natanzon, in the United States District Court for the District of Maryland, Civil No. MJG-02-CV 1868 (the "Litigation").

5. In response to the allegations contained in paragraph 35, Plaintiff admits that ERN was a party to a contract with EFS National Bank, entitled "Merchant Processing Agreement," attached as part of Exhibit 3 to the Complaint (bates stamped documents 0108- 0118), and to a contract with National Payment Systems, Inc. d/b/a Card Payment Systems, entitled "Processing Service Agreement," attached as part of Exhibit 3 to the Complaint (bates stamped documents 0101 - 0107. Compensation was paid to ERN under the terms of those agreements, and the agreements speak for themselves. The compensation paid to ERN under the terms of those agreement is referred to as "residuals."

6. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36, except that Plaintiff denies that the rights and obligations of ERN, its ISO's, and its merchant banks are "coextensive and inextricably linked," as opposed to being a matter of written contracts.

7. Plaintiff denies the allegations contained in paragraph 37, except Plaintiff admits that portfolios of merchant accounts are bought and sold based on negotiated contracts in the context of fluctuating market forces. In particular, Plaintiff specifically denies that it is a "common practice" or "typical" for portfolios to be sold for "24 times the average monthly residual" [sic].

8. Plaintiff denies the allegations contained in paragraph 38. If ERN had ISO agreements, as alleged, ERN failed and refused to produce the agreements in response to the comprehensive document requests served on it in the Litigation. Plaintiff further notes that at no time during the Litigation, including during the submission of the dispute over the final written agreement to Judge Garbis in August and September 2002, and during the subsequent 30-day period in September and October 2002 in which ERN negotiated the sale of the merchant account portfolios, did Mr. Natanzon and ERN mention or refer to any such "agreements" or any duty or obligation as alleged. Plaintiff specifically denies that any such agreements obligate Plaintiff to pay any person or entity any sum on account of ERN's sale of its merchant account portfolios.

9. Plaintiff denies the allegations contained in paragraph 39, and further notes that the allegations in paragraph 39 are a disingenuous, after-the-fact attempt by ERN to recharacterize the terms and conditions of the parties' MOU and Rider entered into as part of the settlement of the Litigation. Plaintiff states that the terms and conditions of the parties' written agreements, as construed by the Court, are determinative of the parties' rights and obligations, and preclude ERN's Counterclaim. ERN's Counterclaim is nothing more than a late-generated, self-serving fabrication to attempt to retain funds the Court has unambiguously held belong to Plaintiff but were wrongfully misappropriated by ERN.

10. In response to the allegations contained in paragraph 40, Plaintiff admits that ERN received and wrongfully misappropriated residual income after July 12, 2000, which under the unambiguous terms of the parties' MOU and Rider ERN was obligated to have delivered directly to Plaintiff as a credit against the $2 million settlement payment. Plaintiff is without knowledge or information sufficient to admit or deny the truth of the remainder of the allegations contained in paragraph 40.

11. In response to the allegations contained in paragraph 41, Plaintiff admits that ERN received and wrongfully misappropriated residual income after July 12, 2000, which under the unambiguous terms of the parties' MOU and Rider ERN was obligated to have delivered directly to Plaintiff as a credit against the $2 million settlement payment. Plaintiff is without knowledge or information sufficient to admit or deny the truth of the remainder of the allegations contained in paragraph 41.

12. Plaintiff is without knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph Plaintiff 42, except Plaintiff denies that it has any duty or obligation to ERN's ISO's.

13. Plaintiff denies the allegations contained in paragraph 43 and in particular denies that it has any duty or obligation to ERN's ISO's. Plaintiff notes further that ERN did not disclose any information or documents relating to its ISO's in discovery in the Litigation, nor did ERN provide for payment of its ISO's when ERN sold its merchant account portfolios as required by the MOU and Rider, nor did ERN even raise the subject until it manufactured the claims contained in its Counterclaim.

14. Plaintiff denies the allegations contained in paragraph 44, except Plaintiff admits that, after ERN's bad faith refusal to perform its obligations under the MOU and Rider, requiring this

Court's intervention at the request of the Buchbinder parties, and after the Court's unambiguous September 16, 2002, ruling [a copy of which is attached to the Complaint as Exhibit 6 (Judge' Garbis' decision is dated September 13 but it was not filed and entered of record until September 16)] requiring ERN to permit the sale of its merchant account portfolios, ERN sold its merchant account portfolios on or about October 15, 2002. All or substantially all of the gross sale proceeds of $1.6 million were paid to Baron. The lack of veracity in ERN's allegations in its Answer and Counterclaim are underscored by ERN's averments in this paragraph "upon information and belief" that Baron sold the merchant account portfolios. ERN knows that ERN was the seller because ERN, defined as "Seller," executed two written asset purchase agreements selling its merchant account portfolios, which transactional documents ERN's counsel extensively negotiated over a period of several weeks, unjustifiably and needlessly prolonging the sale transactions. In the meantime, ERN unjustifiably refused to permit the sale of the merchant account portfolios or to pay over the residual income, as required by the MOU and Rider. ERN knows or should know that during the three-month period in which ERN unjustifiably and deliberately obstructed the efforts to market and sell the portfolios, market conditions deteriorated dramatically so that the ultimate sale could only be achieved for approximately 20 times $80,000 in monthly residual income instead of the price of 24 times $80,000 in monthly residual income which had originally been achieved by Buchbinder in July 2000 at the settlement table. These facts were all set forth in detailed and contemporaneous submissions to the Court on August 26 and September 6, 2002, tracking the decline in the portfolio market value to the decline in the stock market during the relevant period.

15. Plaintiff is without knowledge or information sufficient to admit or deny the truth of the

allegations contained in paragraph 45, except Plaintiff denies that Baron sold the merchant account portfolios. Plaintiff denies that Baron has any duty or obligation to ERN's ISO's on account of ERN's sale of its merchant account portfolios.

16. Plaintiff is without knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 46. Plaintiff notes further that ERN did not disclose any information or documents relating to its ISO's in discovery in the Litigation, nor did ERN provide for payment of its ISO's when ERN sold its merchant account portfolios as required by the MOU and Rider, nor did ERN even raise the subject until it manufactured the claim contained in its Counterclaim. Plaintiff notes that ERN has apparently defrauded its ISO's by failing and refusing to disclose to them that ERN sold its merchant account portfolios as part of ERN's settlement of the Litigation.

17. Plaintiff denies the allegations contained in paragraph 47.

### REPLY TO COUNT I: INDEMNIFICATION

18. Plaintiff incorporates herein by reference its allegations set forth in its Complaint as well as its answers to the allegations contained in paragraphs 1 - 47 of the Counterclaim as if set forth fully again.

19. Plaintiff denies the allegations contained in paragraph 48 except that Plaintiff admits that Plaintiff was a party with ERN to the MOU and Rider, which agreements govern the rights and obligations of the parties. Plaintiff denies that ERN has accurately characterized the terms and conditions of the parties' agreements.

20. Plaintiff denies the allegations contained in paragraph 49.

21. Plaintiff denies the allegations contained in paragraph 50.

22. Plaintiff denies the allegations contained in paragraph 51.

23. Plaintiff denies the allegations contained in paragraph 52. Plaintiff notes further that ERN did not disclose any information or documents relating to its ISO's in discovery in the Litigation, nor did ERN provide for payment of its ISO's when ERN sold its merchant account portfolios as required by the MOU and Rider, nor did ERN even raise the subject until it manufactured the claim contained in its Counterclaim.

24. Plaintiff denies the allegations contained in paragraph 53.

### REPLY TO COUNT II: UNJUST ENRICHMENT

25. Plaintiff incorporates herein by reference its allegations set forth in its Complaint as well as its answers to the allegations contained in paragraphs 1 - 53 of the Counterclaim as if set forth fully again.

26. Plaintiff denies the allegations contained in paragraph 54 except that Plaintiff admits that Plaintiff was a party with ERN to the MOU and Rider, which agreements govern the rights and obligations of the parties. Plaintiff denies that ERN has accurately characterized the terms and conditions of the parties' agreements. Plaintiff notes that ERN has in effect admitted that it misappropriated the residual payments which are the subject of the Plaintiff's Complaint.

27. Plaintiff denies the allegations contained in paragraph 55 except that Plaintiff admits that Plaintiff was a party with ERN to the MOU and Rider, which agreements govern the rights and obligations of the parties. Plaintiff denies that ERN has accurately characterized the terms and conditions of the parties' agreements. Plaintiff notes that ERN sold the merchant account portfolios by two written asset purchase agreements and directed that the sale proceeds be paid to Baron as required by the MOU and Rider.

28. Plaintiff denies the allegations contained in paragraph 56.

29. Plaintiff denies the allegations contained in paragraph 57 except that Plaintiff admits that Plaintiff was a party with ERN to the MOU and Rider, which agreements govern the rights and obligations of the parties. Plaintiff denies that ERN has accurately characterized the terms and conditions of the parties' agreements or the custom and practice in the industry.

30. Plaintiff denies the allegations contained in paragraph 58.

### REPLY TO COUNT III: INTENTIONAL INTERFERENCE WITH ECONOMIC INTERESTS

31. Plaintiff incorporates herein by reference its allegations set forth in its Complaint as well as its answers to the allegations contained in paragraphs 1 - 58 of the Counterclaim as if set forth fully again.

32. Plaintiff denies the allegations contained in paragraph 59. Pursuant to the MOU and Rider to which ERN is an executing party, and the order entered on September 16, 2002, by the United States District Judge Marvin J. Garbis, a copy of which is attached to the Complaint as Exhibit 6 (Judge' Garbis' decision is dated September 13 but it was not filed and entered of record until September 16), ERN sold its merchant account portfolios and directed that the sale proceeds be paid to Baron to be applied to ERN's $2 million settlement payment. In the September 16 decision (Exhibit 6, at 2), Judge Garbis held, in pertinent part, as follows:

> The agreement most reasonably interpreted consistent with the MOU is that the $2,000,000 obligation was due on July 12, 2002 subject to restrictions. The primary pertinent restriction is that the obligation is payable only out of the assigned accounts and prospective residuals. There is no recourse to the Natanzon group. Moreover, interest (at an agreed 8%) would commence to accrue on any unpaid balance outstanding on October 10, 2002. Thus, there was a 90 day no interest period but not a 90 day "no collection of principal" period.

> The authority to sell the assigned accounts was effective immediately on July 12.
>
> I find that the agreement, best interpreted in context, calls for the immediate, July 12, 2002, assignment of accounts and prospective (after July 12, 2002) residual payments on said accounts. Therefore, any residual payments received after July 12, 2002 with respect to any assigned accounts were to be "delivered directly" to Michelle and applied as a credit against the $2,000,000 due. The Natanzon parties had no right to retain any residuals and must pay the Buchbinder group the amounts of all such residuals plus interest from the date of receipt of each such residual payment. The interest rate shall be the "standard" prejudgment interest rate of 6% simple per annum.
>
> I conclude that the accounts (and residuals associated therewith) assigned are limited to those extant on July 12, 2002 or, if greater, a group having residuals of $80,000 per month.

33. Plaintiff denies the allegations contained in paragraph 60.

34. Plaintiff denies the allegations contained in paragraph 61.

35. Plaintiff denies the allegations contained in paragraph 62.

36. Plaintiff denies each and every allegation of ERN's Counterclaim not specifically and expressly admitted herein.

## PLAINTIFF'S PLEA OF SETOFF TO COUNTERCLAIM

37. Plaintiff incorporates herein by reference the allegations set forth in its Complaint as well as its answers to the allegations contained in paragraphs 1 - 62 of the Counterclaim as if set forth fully again.

38. On July 12, 2002, Natanzon and Buchbinder entered into a settlement agreement, on behalf of themselves individually and on behalf of the parties to the Litigation, including Baron. The settlement agreement was titled "Memorandum of Understanding Re: Settlement Agreement" (the "MOU"). A copy of the MOU is attached to Plaintiff's Complaint as Exhibit 1 and is incorporated herein by reference. (The MOU copy attached as Exhibit 1 has

been annotated by adding paragraph numbers in the left margin of the MOU to simplify reference to the MOU provisions mentioned in this complaint.) The parties amended the MOU by a document titled, "Rider to Memorandum of Understanding Re: Settlement Agreement," a copy of which is attached to Plaintiff's Complaint as Exhibit 2 (the "Rider"). The MOU and Rider provided for ERN to pay Baron (as successor to Michelle) the sum of $1,999,999. This sum was to be paid solely from the sale of ERN's portfolios of merchant accounts and from the residual income fees generated by the portfolios pending the sale.

39. The MOU provided that,

> "As security for payment of the $2,000,000, ERN, LLC assigns certain general intangibles, namely the prospective residual payment s due from Concord and CPS, and the underlying portfolio of accounts to Michelle Trading Corporation, which ERN, LLC authorizes Michelle to sell as agent for ERN, LLC (with ERN's consent which shall not be unreasonably withheld), ... ."

MOU, Exhibit 1, at paragraph 4 [This MOU paragraph was amended by the Rider, Exhibit 2, at paragraph 15.2, "substituting '$1,999,999' for '$2,000,000' and 'Baron' for 'Michelle Trading Corporation' and 'Michelle.'"].

40. In MOU paragraph 16, the parties also agreed to submit any irreconcilable disputes regarding the final written settlement document to follow the MOU to the Court for a final binding decision. The MOU did not proceed smoothly to a "final written document."

41. By August 26, 2002, after extensive negotiations, including the extension of the 14-day period for finalizing the settlement agreement, the parties had been unable to resolve their differences regarding the "final written agreement" specified in paragraph 16 of the MOU. Michelle invoked the dispute resolution mechanism contained in paragraph 16 of the MOU and submitted the irreconcilable dispute, as provided in the MOU, to the Honorable Marvin J. Garbis. A copy of Michelle's August 26 submission to Judge Garbis is attached to the

Plaintiff's Complaint as Exhibit 3. ERN answered Michelle's submission on August 30, a copy of which is attached to Plaintiff's Complaint as Exhibit 4, and Michelle replied thereto on September 9, a copy of which is attached to Plaintiff's Complaint as Exhibit 5.

42. On September 16, 2002, Judge Garbis rendered his decision, a copy of which is attached to Plaintiff's Complaint as Exhibit 6 (Judge' Garbis' decision is dated September 13 but it was not filed and entered of record until September 16). In the September 16 decision (Exhibit 6, at 2), Judge Garbis held, in pertinent part, as follows:

> The agreement most reasonably interpreted consistent with the MOU is that the $2,000,000 obligation was due on July 12, 2002 subject to restrictions. The primary pertinent restriction is that the obligation is payable only out of the assigned accounts and prospective residuals. There is no recourse to the Natanzon group. Moreover, interest (at an agreed 8%) would commence to accrue on any unpaid balance outstanding on October 10, 2002. Thus, there was a 90 day no interest period but not a 90 day "no collection of principal" period.
>
> The authority to sell the assigned accounts was effective immediately on July 12.
>
> I find that the agreement, best interpreted in context, calls for the immediate, July 12, 2002, assignment of accounts and prospective (after July 12, 2002) residual payments on said accounts. Therefore, any residual payments received after July 12, 2002 with respect to any assigned accounts were to be "delivered directly" to Michelle and applied as a credit against the $2,000,000 due. The Natanzon parties had no right to retain any residuals and must pay the Buchbinder group the amounts of all such residuals plus interest from the date of receipt of each such residual payment. The interest rate shall be the "standard" prejudgment interest rate of 6% simple per annum.
>
> I conclude that the accounts (and residuals associated therewith) assigned are limited to those extant on July 12, 2002 or, if greater, a group having residuals of $80,000 per month.

43. Following Judge Garbis' September 16 decision, ERN finally stopped obstructing all efforts to arrange a sale of the portfolio but still unjustifiably prolonged the sale negotiations until

-11-

mid-October. On October 15, 2002, after ERN extensively negotiated the asset purchase agreements selling the merchant account portfolios, "ERN, LLC" through its sole "Manager," "Rony Natanzon," executed two asset purchase agreements selling its merchant account portfolios for $1,600,000, or approximately 20 times residuals.

44. As explained in Michelle's September 9 reply, attached to Plaintiff's Complaint as Exhibit 5, at 1-2, if ERN had not breached its settlement obligations and wrongfully obstructed the sale of the portfolios for over three months after the July 12 settlement, the sale price would have been considerably higher. In fact, during the settlement negotiations on July 12, based on Mr. Natanzon's claim of residuals of at least $80,000 per month, Mr. Buchbinder, at the settlement table, made a telephone call and arranged a sale of ERN's portfolios for 24 times residuals, instead of the lower 20 times residuals available in October after the precipitous stock market decline of the summer of 2002. See Buchbinder Affidavit attached to Buchbinder's September 9 reply, Exhibit 5 to Plaintiff's Complaint. As a direct result of ERN's unjustified and deliberate refusal to permit the sale of the portfolios and by ERN's wrongful and deliberate misappropriation of the portfolio residuals until the Court's September 16 ruling, ERN caused Plaintiff to sustain damages of at least $480,000, measured by the decline in the market value of the portfolios from 24 times residuals to 20 times residuals, or approximately $320,000 (4 times $80,000), and by the amount of the residuals ERN misappropriated, approximately $160,000, plus interest, attorneys' fees, and costs.

WHEREFORE, Baron prays the Court set off the sum of at least $480,000, plus interest, attorneys' fees, and costs, from any sum awarded ERN, LLC against Plaintiff on the Counterclaim.

## AFFIRMATIVE DEFENSES

45. Defendant's Counterclaim fails to state a cause of action upon which relief can be granted.

46. Defendant's Counterclaim is barred by the defense of accord and satisfaction.

47. Defendant's Counterclaim is barred by waiver and/or estoppel.

48. Defendant's Counterclaim is barred by res judicata, collateral estoppel, claim preclusion, and/or issue preclusion.

49. Defendant's Counterclaim is barred by laches.

50. Defendant's Counterclaim is barred by set off and/or recoupment.

51. Defendant's Counterclaim is barred by release.

52. Defendant's Counterclaim is barred by the statute of frauds.

53. Defendant's Counterclaim is barred by contributory negligence.

54. Defendant's Counterclaim is barred by fraud.

WHEREFORE, having fully answered the Counterclaim, Plaintiff, Baron Financial Corporation, prays that the Court dismiss the Counterclaim with prejudice and with all costs, and enter judgment in Plaintiff's favor against Defendant, ERN, LLC, for at least $163,747.75, plus additional prejudgment interest of $26.30 per day from January 1, 2003, until the entry of judgment, plus post-judgment interest, costs, attorneys' fees, and such other and further relief as may be just and proper.

David B. Goldstein
Brooke Schumm, III
DANEKER, McINTIRE, SCHUMM, PRINCE,
 GOLDSTEIN, MANNING & WIDMANN, P.C.
One North Charles Street, Suite 2450
Baltimore, MD 21201
(410) 649-4755

## CERTIFICATE OF SERVICE

I certify that on this 19th day of March, 2003, I caused this document to be served electronically after telephonic notice of the electronic filing was given to Paul Mark Sandler, Esquire, Robert B. Levin, Esquire, and Eric R. Harlan, Esquire, Shapiro, Sher, Guinot, and Sandler, 36 South Charles Street, Suite 2000, Baltimore, Maryland 21201.

_____
David B. Goldstein