## MEMORANDUM OF UNDERSTANDING RE: SETTLEMENT AGREEMENT

1. This is an agreement between and among Rony Natanzon, and Samuel Buchbinder, for themselves and as Members of ERN, LLC, Rony Natanzon as Manager of ERN, LLC for and on behalf of ERN, LLC, and Samuel Buchbinder for Michelle Trading Corporation and for Baron Financial Corporation effective this 12th day of July, 2002.

2. ERN, LLC shall within 90 days (the "90-day period") pay $2,000,000 for the interest of Michelle Trading Corp. in ERN, LLC without offset, defense or counterclaim, time being of the essence to Michelle Trading Corp. ("Michelle").

3. Michelle shall have a security interest in the 50% member interest in ERN, LLC held by Natanzon as security for payment of the $2,000,000 to Michelle Trading Corp. immediately upon execution of this agreement. Sam Buchbinder and Baron Financial shall have no obligations to ERN, LLC and may enter upon any line of business. There shall be no knowing solicitation of existing customers as of this date, and no solicitation of existing employees unless they have resigned and there shall be no hiring of such person within 60 days of their resignation.

4. As security for payment of the $2,000,000, ERN, LLC assigns certain general intangibles, namely the prospective residual payments due from Concord and CPS, and the underlying portfolio of accounts to Michelle Trading Corporation, which ERN, LLC authorizes Michelle to sell as agent for ERN, LLC (with ERN's consent which shall not be unreasonably withheld), and ERN, LLC represents that it has obtained consent to a waiver of any lien by David Rombro in said general intangibles which shall be immediately delivered in writing. ERN, LLC and Natanzon agree to obtain and deliver all consents required by any purchaser. Upon such sale, the proceeds shall be applied to the $2,000,000 obligation and delivered upon closing to Michelle. All residual payments shall be delivered directly to Michelle, and applied as a credit against the $2,000,000 due. Natanzon. Natanzon represents that it is experiencing 1.5% attrition and 1.5% attrition on old accounts. With respect to assigned accounts, they are excluded from the prohibition of solicitation provided the merchant has sent a letter of cancellation or has Buchbinder or any of his entities send such letter to ERN, and ERN agrees not to charge said merchant a cancellation fee other than the normal monthly processing fee. *See para 5 attached as part of this Attachment* [handwritten]

5. The sum of $10,000,000 and any other obligation pursuant to ERN Israel set forth later shall be paid by ERN, LLC to Baron Financial on or before July 31, 2005, without offset, defense, or counterclaim, time being of the essence, which sum shall be secured in full by the member owner interest held by Natanzon in ERN, LLC. Such payment shall be due without interest; provided however, if said payment is not timely paid, interest shall be charged and calculated on said sum of said $10,000,000 amount due, including as may be amended below, at ten per cent 10% per annum simple interest accrued retroactively to July 31, 2002, and continuing thereafter. In order to secure said payment and to induce Baron Financial Corporation and Michelle Trading Corp. to release their security interest, Natanzon shall escrow all of his interest in ERN, LLC with an attorney appointed by Buchbinder, to be held as security for said timely payment, and a financing statement

may be filed reflecting said security interest. Upon failure to pay timely said $10,000,000 amount due, including as may be amended below, then all net income of ERN, LLC shall be paid to Baron Financial, and ERN, LLC shall be required to sell any credit card income stream portfolio and profits after July 1, 2005 will be paid to Michelle. In any event, the sum of $10,000,000 obligation as it may be amended below, shall be due and payable in full on July 31, 2007, and if not paid, 100% of the member owner interest shall automatically and without notice or any other action required be foreclosed by Michelle and any amount due over the debt shall be paid to Natanzon.

6. Pending the payment of said $10,000,000 obligation as it may be amended below, Natanzon, and Natanzon family and relatives shall be limited to total direct and indirect compensation of $550,000 per year plus a salary to Amit Natanzon of not more than $50,000 plus commissions.

7. The parties agree that the United States District Court for the District of Maryland does and shall have subject matter jurisdiction of this matter, including to enter all orders to enforce and implement this agreement. The motion to remand filed by Natanzon shall be withdrawn.

8. ERN, LLC, Rony Natanzon, and any entity or affiliate controlled by him or them do hereby immediately and unconditionally release and forever discharge Buchbinder, Michelle, Baron, and any of their affiliates and any ex-employees or contractors of ERN, Natanzon, Buchbinder, Michelle, or Baron, including Leslie Kessler, Kenneth Morris, Tracy Metzger, Anthony Ashe, Michael Rosenbloom, Dinah Weiss, Bruce Balonick and Yelena Dvorkin, for any claims or causes of action whatsoever referring or relating to ERN, LLC, ERN entities and/or Natanzon. Buchbinder, Michelle, and Baron (and any of their affiliates) do hereby immediately and unconditionally release and forever discharge ERN, LLC, Rony Natanzon, Stuart Rombro and any entity or affiliate controlled by him or them for any claims or causes of action referring or relating to ERN, LLC; provided, however, that Sam Buchbinder and/or any entity controlled by him do not release any other claim or cause of action or claim or cause of action that may arise pursuant to an outstanding letter of credit issued for the benefit of a creditor of ERN Israel, or from breach of the indemnity obligation below. ~~Buchbinder reserves all rights and does not release any claim against Lipman Electronic Engineering Ltd. and/or any other Lipman entity or any financial institution.~~ By end of April 1, 2003, if outstanding letters of credit issued by Bank Leumi remain outstanding for any reason, the amount of the principal and accrued interest shall be added to the $10,000,000.00 obligation set forth above and secured by the same secured interest referred to above.

9. Rony Natanzon agrees to hold Sam Buchbinder and his entities Michelle, Baron and persons and entities affiliated with him harmless from any claims made or causes of action filed by any ERN entity, including ERN International, ERN Israel, and Atidecm.

10. Buchbinder and Natanzon shall own ERN Israel 50%-50% and said stock or membership ownership interests shall be promptly documented and issued to Buchbinder and Natanzon. In consideration of the immediate transfer of said Buchbinder 50% interest,

Natanzon guarantees personally that he will reimburse Sam Buchbinder without offset demand or counterclaim any draw on the $1,000,000 letters of credit with all costs and attorneys fees of collection.

11   And except Sam Buchbinder does not release the obligations of $350,000 from Rony Natanzon to Sam Buchbinder, which amount Rony Natanzon agrees to pay commencing on January 1, 2003 in level payments of interest and principal amortized over 5 years at the rate of 8% APR. If not timely paid, then costs of collection and attorneys' fees shall be due.

12   If David Rombro defaults the debt due to him from ERN, then the $10,000,000.00 shall immediately be due and payable.

13   ERN, LLC, shall indemnify and hold harmless Michelle, Baron and Buchbinder from any and all claims on guarantees that were outstanding in favor of creditors of ERN, LLC except the Lipman letter of credit.

14   Natanzon shall diligently prosecute any and all patent applications and they shall be assigned to ERN, LLC.

15   During the 90-day period, there shall be no payments to any relative of Mr. Natanzon or his family (referred to as an "insider") other than the ordinary salaries currently paid and industry standard commissions to Amit Natanzon, and there shall be no payments on insider debt and there shall be no distributions of any type to any insider. Each Friday, a copy of the check register, certified as true and correct by Beth Cooper and Rony Natanzon, shall be delivered to counsel for Michelle without grace period. Counsel shall receive copies of all bank statements, and may with Ms. Cooper present, conference in with the Bank to verify any entries made.

16   The parties hereto agree to execute a final written document(s) within 14 days consistent with this Memorandum of Understanding. The parties agree that if, in drafting said final written document, there is any irreconcilable dispute regarding the language of the agreement or any missing terms, the parties agree that U.S. District Judge Marvin Garbis, or a magistrate judge designated by the Court or mutually agreed similarly qualified person shall decide the dispute with all objections or rights of appeal waived.

17   All parties agree that all litigation shall be stayed 100 days, all response and pleading deadlines shall be similarly extended, and upon consummation of the payment of $2,000,000.00, and compliance by all parties with the terms of this Memorandum and agreements executed pursuant to this Memorandum, all pending litigation in the United States, Illinois, Maryland, and the State of Israel shall be dismissed with prejudice and the notes outstanding shall be cancelled.

18   This agreement is made in Maryland and Maryland law shall govern. The parties agree that this agreement supersedes the buy-sell agreement, and any inconsistent provisions of the Operating Agreement and Employment Agreement.

19  Upon satisfaction by ERN, LLC and Natanzon of all obligations hereunder, Buchbinder shall cause to be delivered all releases and transfers of interests of ERN, LLC interests.

_____
RONY NATANZON
For himself, including as member-owner
of ERN, LLC

For ERN, LLC
ERN Israel, Ltd.
ATIDEEM, LLC
ERN International, LLC

_____
SAM BUCHBINDER

For himself, including as member
owner of ERN, LLC

For Michelle Trading Corporation
For Baron Financial Corp.

_____
KEN MORRIS

20. If the aforesaid sale does not occur and the residuals do not satisfy the obligation to pay the said two million dollars, the said two million dollars plus 8 per cent interest will be paid by CPS and Concord existing portfolio or residuals approximately 80 thousand dollars per month. After principal and interest have been paid in full, the residuals will be assigned back to ERN.

page 5

# RIDER TO MEMORANDUM OF UNDERSTANDING
# RE
# SETTLEMENT AGREEMENT

This Rider is made as of the 12th day of July, 2002 by and among Rony Natanzon ("Natanzon") and Samuel Buchbinder ("Buchbinder"), each individually and as a direct or indirect member of ERN, LLC, a Maryland limited liability company ("ERN"), Michelle Trading Corp., an Illinois corporation ("MTC"), Baron Financial Corp., an Illinois corporation ("Baron"), ERN, ERN Israel, Ltd., an Israeli corporation ("ERN Israel"), ATIDEEM, LLC, a Delaware limited liability company ("ATIDEEM"), and ERN International, LLC, a Delaware limited liability company ("ERN International").

## RECITALS

A.  The parties hereto are parties to that certain Memorandum of Understanding re: Settlement Agreement dated July 12, 2002 (the "MOU"), a copy of which is attached hereto (references herein to paragraph numbers are to the numbers manually inserted in the left margin of said attachment).

B.  Natanzon directly or indirectly has an interest in ERN, ERN Israel, ATIDEEM and ERN International and Buchbinder directly or indirectly has an interest in ERN, MTC, Baron, ERN Israel, ATIDEEM and ERN International.

C.  Pursuant to Paragraph 16 of the MOU, the parties hereto desire to clarify and supplement the MOU as provided herein.

NOW, THEREFORE, the parties hereto, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, do hereby agree as follows:

1.  <u>Conflict</u>.  In the event of any conflict between the terms and provisions of the MOU and the terms and provisions of this Rider, the terms and provisions of this Rider shall govern and control the rights and obligations of the parties hereto.

2.  <u>Domicile</u>.  Natanzon and ERN hereby represent and warrant that (i) Natanzon is a resident of Maryland and (ii) ERN is a Maryland limited liability company whose Maryland Department of Assessments and Taxation department ID is W04368759.

3.  <u>Purchase by Natanzon of MTC's Interest and Payment to Baron</u>. Paragraph 2 of the MOU shall be modified to read as follows: "Natanzon shall immediately purchase the interest of MTC for the sum of $1.00, and the sum of $1,999,999 shall be paid to Baron Financial Corp. ("Baron") as partial repayment of

loans made by Baron to ERN within ninety (90) days (the "90-day period") without offset, defense or counterclaim, time being of the essence to Baron."

   4. <u>Grant of Security Interest by Natanzon</u>.  For good consideration, Natanzon hereby hypothecates and grants to Buchbinder and Baron a security interest in his entire membership interest (whether now existing or future acquired) of ERN (which Natanzon represents and warrants following the purchase by Natanzon of MTC's membership interest, will be 100% of the membership interest in ERN) and the proceeds thereof, to secure the payment and performance of (i) ERN's obligations under paragraph 2 of the MOU as modified by paragraph 3 hereof, and (ii) the obligations of Natanzon, ERN and ERN Israel under paragraphs 5, 8 and 10 of the MOU. To facilitate the creation of such security interests, Natanzon agrees to (i) enter into a Pledge and Escrow Agreement (the "Escrow Agreement") in the form attached hereto, (ii) cause ERN to issue a certificate of membership interest evidencing his ownership interest (including the interest purchased from MTC), and (iii) deliver such certificate together with an undated assignment separate from certificate executed in blank to the escrow agent pursuant to the terms of such Escrow Agreement. Until all obligations of Natanzon, ERN and ERN Israel are satisfied hereunder, Natanzon covenants and agrees that ERN will not issue any additional membership interest in ERN nor will he transfer his membership interest in ERN to any other person or entity without the prior written consent of Baron. Until all obligations of Natanzon, ERN and ERN Israel are satisfied hereunder, Natanzon further covenants and agrees that he shall operate ERN in the ordinary course of business and use his best efforts to maximize the profitability of ERN. Natanzon hereby authorizes Buchbinder and Baron to file appropriate financing statements and amendments thereto to perfect or continue the perfection of such interest.  Each of ERN and Natanzon hereby agrees and irrevocably consents to the admission of any purchaser or transferee of the pledged membership interest as a full voting member of ERN with all rights relating thereto.

   5. <u>Grant of Security Interest by ERN to Baron</u>.  ERN hereby grants to Baron (or if previously granted to Baron, confirms and agrees to continue) a security interest in and to all of its right, title and interest in the greater of (a) all merchant accounts as of July 12, 2002 and all of its right, title and interest to any and all rights to all current and future residual payments from said merchant accounts and all proceeds thereof arising in any way from any relationship with Concord EFS, Inc. and its affiliates, including but not limited to CPS, or (b) merchant accounts sufficient to generate residual payments therefrom equal to a total of $80,000 per month and all of its right, title and interest to any and all rights to all current and future residual payments from said merchant accounts and all proceeds thereof arising in any way from any relationship with Concord EFS, Inc. and its affiliates, including but not limited to CPS, ((a) and (b) collectively being the "ERN Collateral") to secure the payment and performance of ERN's obligations under paragraphs 2 and 20 of the MOU. ERN hereby authorizes Baron to file appropriate financing statements and amendments thereto to perfect or continue the perfection of such interest. At the time of execution of

Rider to Memorandum of Understanding  
Baron Financial Corp.

2.

this Rider, ERN shall deliver to Baron the waiver of lien by David Rombro referred to in paragraph 4 of the MOU.

6. Agency. Effective as of July 12, 2002, and until meeting all of its obligations under paragraphs 2 and 20 of the MOU, ERN irrevocably (as an agency coupled with an interest) hereby authorizes Baron from time to time to sell the ERN Collateral in whole or in part, with ERN's consent which will not be unreasonably withheld or delayed. Notwithstanding the foregoing, Baron's authority to sell the ERN Collateral is limited to that portion of the ERN Collateral which will result in proceeds from sale equal to $1,999,999.00, less amounts already paid thereon, if any, plus accumulated interest, and, if the sale is a foreclosure sale, all costs of sale and other amounts which a secured party may collect in accordance with the provisions of Article 9 of the Uniform Commercial Code as adopted in the State of Maryland. As long as the amount receivable by Baron from any such sale is not reduced, Baron will not unreasonably fail to cooperate with ERN as to the merchants included in the ERN Collateral to be included in the sale, it being understood that it shall not be unreasonable for Baron to include those merchants required by a purchaser, notwithstanding that ERN would prefer that different merchants be included. In addition, effective immediately and until meeting all of its obligations under paragraphs 2 and 20 of the MOU, ERN irrevocably (as an agency coupled with an interest) hereby authorizes Baron from time to time to collect the residual payments with respect to such ERN Collateral, and to apply the proceeds in satisfaction of its obligations under the MOU and hereunder.

7. Clarification and Corrections:

7.1 For clarification of paragraph 5 of the MOU, the reference to "Michelle" in the 4th and 5th sentences of paragraph 5 should be to "Baron". The reference to "July 1, 2005" in the 4th sentence should be to "July 31, 2005".

7.2 For clarification of paragraph 8 of the MOU, for purposes of the releases given and received under such paragraph, ERN Israel shall be deemed to be an entity or affiliate controlled by Natanzon or ERN and as an entity giving and receiving the releases referred to therein. As further clarification of such release, the Employment Agreement between Anthony Ashe and ERN is void. In addition, Natanzon, ERN and ERN Israel hereby release Buchbinder, MTC and Baron from any claim Natanzon, ERN or ERN Israel may assert directly or indirectly against any of them with respect to ATIDEEM or ERN, International, either individually or as a member of ATIDEEM or ERN, International, and (except with respect to Natanzon's obligations under paragraph 9 of the MOU) Buchbinder, MTC and Baron hereby release Natanzon, ERN and ERN Israel from any claim Buchbinder, MTC or Baron may assert directly or indirectly against any of them with respect to ATIDEEM or ERN, International either individually or as a member of ATIDEEM or ERN, International.

7.3    For clarification of paragraph 11 of the MOU, (i) all unpaid amounts outstanding with respect to the $350,000 referred to in such paragraph and all accrued interest thereon shall become immediately due and payable upon the default by Natanzon of any payment required under such paragraph 11 and (ii) all payments thereunder shall be made in monthly installments of principal and interest in the aggregate amount of $7,049.74.

7.4    For clarification of paragraph 15 of the MOU, the restrictions contained therein shall continue for such period that the $1,999,999 described in paragraph 2 of the MOU, as modified by paragraph 3 hereof, or any portion thereof remains unpaid.

7.5    For clarification of paragraph 17 of the MOU, to the extent that a court will not grant the stay contemplated under paragraph 17 of the MOU, the parties agree that the pertinent action shall be dismissed without prejudice and with the right to reinstate. All dismissals, whether with or without prejudice, shall be without the assessment of costs. At the time of a dismissal of an action, all bonds, bank guarantees and other security posted with the court in connection therewith shall be released.

8.    <u>Release of Security Interest</u>.    The release of the security interest referred to in paragraph 5 of the MOU shall be accomplished by amendment to the existing financing statements heretofore executed by ERN in favor of MTC and/or Baron releasing all collateral referenced thereunder except with respect to the ERN Collateral.

9.    <u>Notices</u>.    Any notice or notification which any party may be required or may desire to give under the MOU or hereunder shall be deemed to have been duly given when personally delivered, or on the next business day if sent by overnight courier addressed as set forth below, or on the second business day after mailing by certified or registered mail, postage prepaid, addressed as set forth below, or to such other address as a party hereto may designate by a notice to the other parties:

|  |  |
|---|---|
| If to Buchbinder or<br>MTC or Baron | If to Natanzon or<br>ERN or ERN Israel |
| c/o Sam Buchbinder<br>500 Skokie Boulevard – Suite 200<br>Northbrook, IL 60062 | Rony Natanzon<br>c/o ERN, LLC<br>3102 Timanus Lane, Suite 101<br>Baltimore, Maryland 21224 |
| With a Copy to: | With a copy to: |
| Bruce H. Balonick<br>Arnstein & Lehr<br>120 S. Riverside Plaza – Suite 1200<br>Chicago, Illinois 60606 | Paul M. Sandler<br>Shapiro, Sher, Guinot & Sandler<br>20th floor<br>36 S. Charles St.<br>Baltimore, Maryland 21201<br><br>And<br><br>Stuart R. Rombro<br>Rosenberg Proutt Funk & Greenberg, LLP<br>2115 Allfirst Building<br>25 South Charles Street<br>Baltimore, Maryland 21201 |

10. **Binding Nature.** The MOU and this Rider shall bind and inure to the benefit of the parties hereto and their respective, heirs, successors and assigns. No transfer of any obligations under the MOU or hereunder shall release the transferor from such obligation. Each of the undersigned hereby represents and warrants to the other parties to the MOU and this Rider that he is authorized to sign the MOU and this Rider on behalf of the parties on whose behalf he is executing the MOU and this Rider.

11. **Miscellaneous.** Section headings used herein are for convenience only and shall not be used in construing this Rider. Should any provision of the MOU or this Rider be found to be void, invalid or unenforceable by a court of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of the MOU or this Rider.

12. **Further Assurances.** All parties agree to execute and deliver such additional documents and take such actions as may be required to effectuate the purposes of and the transactions contemplated under the MOU and this Rider, including, but not limited to, providing all information and documentation and taking such other action reasonably necessary in order to negotiate and consummate the sale

of the merchant accounts and consummate the foreclosure of any security interest referred to in the MOU or herein, including but not limited to a letter of direction advising Concord and CPS to provide Buchbinder and Baron with any reports which either of them prepares with respect to the merchants and the residuals. In furtherance of the foregoing, Natanzon for himself and any other grantor of any security interest hereunder, hereby (i) agrees to immediately inform Buchbinder and Baron of any event which may affect the security interests granted hereunder and the perfection thereof and (ii) authorizes the secured parties herein to file original financing statements and amendments in order to perfect or continue the perfection of the security interests granted hereunder.

13. **Consent to Jurisdiction.** The parties hereby irrevocably submit to the jurisdiction of (i) the United States District Court for the District of Maryland sitting in Baltimore, Maryland and (ii) the Circuit Court for Baltimore County, Maryland, in any action or proceeding arising out of or relating to the MOU and/or this Rider and they hereby irrevocably agree that all claims in respect of any action or proceeding may be heard and determined only in such courts. The parties hereby irrevocably waive any objection they may have to the laying of venue of any such action or proceeding arising out of or relating to the MOU or this Rider brought in such courts and any objection on the grounds that any such action or proceeding in any such court has been brought in an inconvenient forum.

14. **Extension of Period to Execute Final Written Documents.** The obligation of the parties to execute final written documents is hereby extended to 35 days from the date of execution of the MOU.

15. **Conforming Changes Required by Modification of Paragraph 2 of MOU.** The following paragraphs of the MOU are hereby modified to reflect the changes required as a result of the modification to paragraph 2 of the MOU by paragraph 3 hereof:

   15.1 Paragraph 3 of the MOU shall be modified by substituting "$1,999,999" for "$2,000,000" and "Baron" for "Michelle Trading Corp." or "Michelle".

   15.2 Paragraph 4 of the MOU shall be modified by substituting "$1,999,999" for "2,000,000", and "Baron" for "Michelle Trading Corporation" and "Michelle".

   15.3 Paragraph 15 of the MOU shall be modified by substituting the word "Baron" for "Michelle".

16. **Drafting.** The parties acknowledge and confirm that each of their respective attorneys has participated jointly in the review and revision of the MOU and

Rider to Memorandum of Understanding  
Baron Financial Corp.

6

this Rider and that it has not been written solely by counsel for one party. The parties hereto therefore stipulate and agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of the MOU and this Rider to favor any party against another.

IN WITNESS WHEREOF, the undersigned have executed this Rider as of the date indicated above.

_____
**RONY NATANZON**
For himself, including as member-owner of ERN, LLC

/s/ Sam Buchbinder
**SAM BUCHBINDER**
For himself, including as an indirect member-owner of ERN, LLC

and for:
ERN, LLC
ERN ISRAEL, LTD
ATTIDEM, LLC
ERN International, LLC

/s/ Kenneth J. Morris
**KEN MORRIS**
for MICHELLE TRADING CORP.
and
for BARON FINANCIAL CORP.

Rider to Memorandum of Understanding
Baron Financial Corp.

7

this Rider and that it has not been written solely by counsel for one party. The parties hereto therefore stipulate and agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of the MOU and this Rider to favor any party against another.

IN WITNESS WHEREOF, the undersigned have executed this Rider as of the date indicated above.

_____
RONY NATANZON
For himself, including as member-owner of ERN, LLC

_____
SAM BUCHBINDER
For himself, including as an indirect member-owner of ERN, LLC

and for:
ERN, LLC
ERN ISRAEL, LTD
ATTIDEM, LLC
ERN International, LLC


_____
KEN MORRIS
for MICHELLE TRADING CORP.
and
for BARON FINANCIAL CORP.

## MEMORANDUM OF UNDERSTANDING RE: SETTLEMENT AGREEMENT

This is an agreement between and among Rony Natanzon, and Samuel Buchbinder, for themselves and as Members of ERN, LLC, Rony Natanzon as Manager of ERN, LLC for and on behalf of ERN, LLC, and Samuel Buchbinder for Michelle Trading Corporation and for Baron Financial Corporation effective this 12th day of July, 2002.

ERN, LLC shall within 90 days (the "90-day period") pay $2,000,000 for the interest of Michelle Trading Corp. in ERN, LLC without offset, defense or counterclaim, time being of the essence to Michelle Trading Corp. ("Michelle").

Michelle shall have a security interest in the 50% member interest in ERN, LLC held by Natanzon as security for payment of the $2,000,000 to Michelle Trading Corp. immediately upon execution of this agreement. Sam Buchbinder and Baron Financial shall have no obligations to ERN, LLC and may enter upon any line of business. There shall be no knowing solicitation of existing customers as of this date, and no solicitation of existing employees unless they have resigned and there shall be no hiring of such person within 60 days of their resignation.

As security for payment of the $2,000,000, ERN, LLC assigns certain general intangibles, namely the prospective residual payments due from Concord and CPS, and the underlying portfolio of accounts to Michelle Trading Corporation, which ERN, LLC authorizes Michelle to sell as agent for ERN, LLC (with ERN's consent which shall not be unreasonably withheld), and ERN, LLC represents that it has obtained consent to a waiver of any lien by David Rombro in said general intangibles which shall be immediately delivered in writing. ERN, LLC and Natanzon agree to obtain and deliver all consents required by any purchaser. Upon such sale, the proceeds shall be applied to the $2,000,000 obligation and delivered upon closing to Michelle. All residual payments shall be delivered directly to Michelle, and applied as a credit against the $2,000,000 due. Natanzon. Natanzon represents that it is experiencing 1.5% attrition and 1.5% attrition on old accounts. With respect to assigned accounts, they are excluded from the prohibition of solicitation provided the merchant has sent a letter of cancellation or has Buchbinder or any of his entities send such letter to ERN, and ERN agrees not to charge said merchant a cancellation fee other than the normal monthly processing fee. *See para 5 attached as part of this Agreement*

The sum of $10,000,000 and any other obligation pursuant to ERN Israel set forth later shall be paid by ERN, LLC to Baron Financial on or before July 31, 2005, without offset, defense, or counterclaim, time being of the essence, which sum shall be secured in full by the member owner interest held by Natanzon in ERN, LLC. Such payment shall be due without interest; provided however, if said payment is not timely paid, interest shall be charged and calculated on said sum of said $10,000,000 amount due, including as may be amended below, at ten per cent 10% per annum simple interest accrued retroactively to July 31, 2002, and continuing thereafter. In order to secure said payment and to induce Baron Financial Corporation and Michelle Trading Corp. to release their security interest, Natanzon shall escrow all of his interest in ERN, LLC with an attorney appointed by Buchbinder, to be held as security for said timely payment, and a financing statement

*S.B. by DBG by authority*

may be filed reflecting said security interest. Upon failure to pay timely said $10,000,000 amount due, including as may be amended below, then all net income of ERN, LLC shall be paid to Baron Financial, and ERN, LLC shall be required to sell any credit card income stream portfolio and profits after July 1, 2005 will be paid to Michelle. In any event, the sum of $10,000,000 obligation as it may be amended below, shall be due and payable in full on July 31, 2007, and if not paid, 100% of the member owner interest shall automatically and without notice or any other action required be foreclosed by Michelle and any amount due over the debt shall be paid to Natanzon.

Pending the payment of said $10,000,000 obligation as it may be amended below, Natanzon, and Natanzon family and relatives shall be limited to total direct and indirect compensation of $550,000 per year plus a salary to Amit Natanzon of not more than $50,000 plus commissions.

The parties agree that the United States District Court for the District of Maryland does and shall have subject matter jurisdiction of this matter, including to enter all orders to enforce and implement this agreement. The motion to remand filed by Natanzon shall be withdrawn.

ERN, LLC, Rony Natanzon, and any entity or affiliate controlled by him or them do hereby immediately and unconditionally release and forever discharge Buchbinder, Michelle, Baron, and any of their affiliates and any ex-employees or contractors of ERN, Natanzon, Buchbinder, Michelle, or Baron, including Leslie Kessler, Kenneth Morris, Tracy Metzger, Anthony Ashe, Michael Rosenbloom, Dinah Weiss, Bruce Balonick and Yelena Dvorkin, for any claims or causes of action whatsoever referring or relating to ERN, LLC, ERN entities and/or Natanzon. Buchbinder, Michelle, and Baron (and any of their affiliates) do hereby immediately and unconditionally release and forever discharge ERN, LLC, Rony Natanzon, Stuart Rombro and any entity or affiliate controlled by him or them for any claims or causes of action referring or relating to ERN, LLC; provided, however, that Sam Buchbinder and/or any entity controlled by him do not release any other claim or cause of action or claim or cause of action that may arise pursuant to an outstanding letter of credit issued for the benefit of a creditor of ERN Israel, or from breach of the indemnity obligation below. ~~Buchbinder reserves all rights and does not release any claim against Lipman Electronic Engineering Ltd. and/or any other Lipman entity or any financial institution.~~ By end of April 1, 2003, if outstanding letters of credit issued by Bank Leumi remain outstanding for any reason, the amount of the principal and accrued interest shall be added to the $10,000,000.00 obligation set forth above and secured by the same secured interest referred to above.

Rony Natanzon agrees to hold Sam Buchbinder and his entities Michelle, Baron and persons and entities affiliated with him harmless from any claims made or causes of action filed by any ERN entity, including ERN International, ERN Israel, and Atideem.

Buchbinder and Natanzon shall own ERN Israel 50%-50% and said stock or membership ownership interests shall be promptly documented and issued to Buchbinder and Natanzon. In consideration of the immediate transfer of said Buchbinder 50% interest,

Natanzon guarantees personally that he will reimburse Sam Buchbinder without offset demand or counterclaim any draw on the $1,000,000 letters of credit with all costs and attorneys fees of collection.

And except Sam Buchbinder does not release the obligations of $350,000 from Rony Natanzon to Sam Buchbinder, which amount Rony Natanzon agrees to pay commencing on January 1, 2003 in level payments of interest and principal amortized over 5 years at the rate of 8% APR. If not timely paid, then costs of collection and attorneys' fees shall be due.

If David Rombro defaults the debt due to him from ERN, then the $10,000,000.00 shall immediately be due and payable.

ERN, LLC, shall indemnify and hold harmless Michelle, Baron and Buchbinder from any and all claims on guarantees that were outstanding in favor of creditors of ERN, LLC except the Lipman letter of credit.

Natanzon shall diligently prosecute any and all patent applications and they shall be assigned to ERN, LLC.

During the 90-day period, there shall be no payments to any relative of Mr. Natanzon or his family (referred to as an "insider") other than the ordinary salaries currently paid and industry standard commissions to Amit Natanzon, and there shall be no payments on insider debt and there shall be no distributions of any type to any insider. Each Friday, a copy of the check register, certified as true and correct by Beth Cooper and Rony Natanzon, shall be delivered to counsel for Michelle without grace period. Counsel shall receive copies of all bank statements, and may with Ms. Cooper present, conference in with the Bank to verify any entries made.

The parties hereto agree to execute a final written document(s) within 14 days consistent with this Memorandum of Understanding. The parties agree that if, in drafting said final written document, there is any irreconcilable dispute regarding the language of the agreement or any missing terms, the parties agree that U.S. District Judge Marvin Garbis, or a magistrate judge designated by the Court or mutually agreed similarly qualified person shall decide the dispute with all objections or rights of appeal waived.

All parties agree that all litigation shall be stayed 100 days, all response and pleading deadlines shall be similarly extended, and upon consummation of the payment of $2,000,000.00, and compliance by all parties with the terms of this Memorandum and agreements executed pursuant to this Memorandum, all pending litigation in the United States, Illinois, Maryland, and the State of Israel shall be dismissed with prejudice and the notes outstanding shall be cancelled.

This agreement is made in Maryland and Maryland law shall govern. The parties agree that this agreement supersedes the buy-sell agreement, and any inconsistent provisions of the Operating Agreement and Employment Agreement.

A:\MEMORANDUM OF UNDERSTANDING RN(final.doc:mmm3
Last Saved: 7/12/02 8:17 PM