

**UNITED STATES DISTRICT COURT**
DISTRICT OF MARYLAND
101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 SEP 16  A 9: 22

AT BALTIMORE

**Chambers of
Hon. Marvin J. Garbis
United States District Judge**

Tele: 410-962-7700
Fax: 410-962-0896

September 13, 2002

TO ALL COUNSEL OF RECORD

      Re: <u>Michelle Trading v. Natanzon, MJG-02-1868</u>

Dear Counsel:

    Pursuant to the agreement of the parties, I have conferred with counsel and considered the documents provided pertaining to the questions presented to me for resolution.

    1. Was the Buchbinder group's authority to sell accounts effective before October 10, 2002 (90 days after July 12, 2002)?

    2. Does the Buchbinder group's right to receive residual payments arise before October 10, 2002?

    3. Was the universe of accounts assigned limited to the greater of accounts extant on July 12, 2002 or accounts generating $80,000 per month in residuals?

    4. Did the Natanzon group waive trial by jury with regard to certain matters?

    In this matter, there was an agreement reached even though the written reflection of the agreement, the Memorandum of Understanding ("MOU") may be silent or ambiguous as to a matter. I am resolving the questions presented in the context of how, based upon the documentation provided, the parties' agreement is most reasonably interpreted. In the instant case, the parties' expression of their agreement is susceptible to more than one reasonable interpretation. Accordingly, whatever decision I make and whatever rationale I provide could be subject to endless debate. Therefore, as discussed, I am not writing a detailed

Counsel of Record
September 13, 2002
Page No. 2

decision.

The parties' agreement, most reasonably interpreted, does not provide for a $2,000,000 obligation payable on October 10, 2002 (90 days after July 12) but not before. Such an agreement (although the words of the MOU could be - but need not be - so read) would have given the Natanzon group a 90 day period during which it would continue to receive the residual income from the accounts and during which the Buchbinder group had no right to sell the assigned accounts.

The agreement most reasonably interpreted consistent with the MOU is that the $2,000,000 obligation was due on July 12, 2002 subject to restrictions. The primary pertinent restriction is that the obligation is payable only out of the assigned accounts and prospective residuals. There is no recourse to the Natanzon group. Moreover, interest (at an agreed 8%) would commence to accrue on any unpaid balance outstanding on October 10, 2002. Thus, there was a 90 day no interest period but not a 90 day "no collection of principal" period.

The authority to sell the assigned accounts was effective immediately on July 12.

I find that the agreement, best interpreted in context, calls for the immediate, July 12, 2002, assignment of accounts and prospective (after July 12, 2002) residual payments on said accounts. Therefore, any residual payments received after July 12, 2002 with respect to any assigned accounts were to be "delivered directly" to Michelle and applied as a credit against the $2,000,000 due. The Natanzon parties had no right to retain any residuals and must pay the Buchbinder group the amounts of all such residuals plus interest from the date of receipt of each such residual payment. The interest rate shall be the "standard" prejudgment interest rate of 6% simple per annum.

I conclude that the accounts (and residuals associated therewith) assigned are limited to those extant on July 12, 2002 or, if greater, a group having residuals of $80,000 per month.

Counsel of Record
September 13, 2002
Page No. 3


    I find that the Natanzon group did not, by the MOU, add to the scope of any waiver of trial by jury.

    Although informal, this letter constitutes an Order of this Court.

                                      Yours truly,

                                      Marvin J. Garbis
                           United States District Judge