# Exhibit 4

**SHAPIRO**
**SHER**
**GUINOT &**
**SANDLER**

Paul Mark Sandler
Direct Dial: 410.385.4286
pms@shapirosher.com

36 S. Charles Street
Suite 2000
Baltimore, Maryland
21201-3147
Telephone: 410.385.0202
Facsimile: 410.539.7611

August 30, 2002

**VIA HAND DELIVERY**

The Honorable Marvin J. Garbis
United States District Judge
United States District Court for
    the District of Maryland
United States Courthouse
101 W. Lombard Street, Room 5C
Baltimore, Maryland  21201

        Re:  Michelle Trading Corporation v. Rony Natanzon,
             Civil Action No.:  MJG-02-1868

Dear Judge Garbis:

        This is in response to Mr. Goldstein's letter to you dated August 26, 2002. Rather than refute each of the points raised by Mr. Goldstein with which we disagree, I think it more appropriate to focus precisely on the disputes of drafting which give rise to Mr. Goldstein's calling upon the Court for assistance.

        Paragraph 16 of the Memorandum of Understanding ("MOU") between the parties provides as follows:

                The parties hereto agree to execute a final written document(s)
                within 14 days consistent with this Memorandum of Understanding.
                The parties agree that if, in drafting said final written document,
                there is any irreconcilable dispute regarding the language of the
                agreement or any missing items, the parties agree that U.S. District
                Judge Marvin Garbis, or a magistrate judge designated by the Court
                or mutually agreed similarly qualified person shall decide the
                dispute with all objections or rights of appeal waived.

        The parties have specific issues relating to drafting, which we need help resolving. These are the issues and our views on their resolution:



SHAPIRO
SHER
GUINOT &
SANDLER

The Honorable Marvin J. Garbis
August 30, 2002
Page 2

    1.     First, whether the security provided by Mr. Natanzon for the $2,000,000 due to be paid to Mr. Buchbinder in ninety (90) days from July 12, 2002 can be sold prior to the expiration of the 90-day period. Mr. Buchbinder suggests that, in drafting the final agreement, a provision be included that gives him the right to sell the security immediately, or before the expiration of the 90-day period.

    Mr. Natanzon takes the position to the contrary. Specifically, Mr. Natanzon suggests that Paragraph 2 of the MOU is clear that the $2,000,000 is not due until the expiration of the 90-day period. Therefore, the collateral securing the obligation should not be sold unless and until the $2,000,000 is not paid within the 90-day period. Paragraph 2 explicitly provides that ERN has 90 days in which to pay the $2,000,000:

> ERN, LLC shall within 90 days (the "90-day period") pay $2,000,000 for the interest of Michelle Trading Corp. in ERN, LLC without offset, defense or counterclaim, time being of the essence to Michelle Trading Corp. ("Michelle").

Moreover, Paragraph 4 describes the collateral, i.e., the portfolio and residual payments, "as security for payment of the $2,000,000."

    It is inconceivable that collateral which secures a payment obligation could or should be obliterated by the payee prior to the payment due date. Paragraph 20 of the MOU provides that after the $2,000,000 principal and interest have been paid in full, the residuals will be assigned back to ERN. How can one assign back residuals from collateral that has been obliterated?

    The MOU thus unambiguously provides that Mr. Buchbinder must wait until October 13, 2002, and determine whether he has received payment by that due date, before he can sell the collateral. Certainly, waiting until October 13, 2002, which is little more than a month away, cannot penalize Mr. Buchbinder. If there is an erosion of the value of the collateral, then Mr. Natanzon will review the matter with Mr. Buchbinder and consider offering additional collateral to secure Mr. Buchbinder. Indeed, Mr. Natanzon has previously offered to do so.

    2.     The second issue of disagreement relating to drafting is whether the residual payments are to be delivered to Mr. Buchbinder immediately as they are received by ERN. Paragraph 4 of the MOU provides in part that "upon such sale the proceeds shall be applied to the $2,000,000 obligation and delivered upon closing to Michelle. All residual payments shall be delivered directly to Michelle and applied as a credit against the $2,000,000 due." As is the case



SHAPIRO
SHER
GUINOT &
SANDLER

The Honorable Marvin J. Garbis
August 30, 2002
Page 3

with the first issue, because the $2,000,000 obligation is not due for ninety (90) days, the residual payments should not be obtained by Mr. Buchbinder prior to that time.

3.    The third drafting issue relates to what portfolio Mr. Buchbinder has the right to sell if the $2,000,000 is not paid in ninety (90) days. The precise question is: Is the portfolio that Mr. Buchbinder has the right to sell the portfolio existing at the time of the execution of the MOU (i.e., as of July 12, 2002), as Paragraph 20 suggests, or does the portfolio consist of "after-acquired property", i.e., accounts obtained by ERN after the MOU was executed?

Mr. Natanzon takes the position that both the MOU and customary commercial practice are clear that if one pledges an existing portfolio as collateral, and one subsequently acquires additional property, the after-acquired property is not part of the collateral unless an agreement specifically and expressly provides that the collateral includes such "after-acquired property." See Md. Ann. Code, Commercial Law Article, §9-204(l) (2001 Supp.). Therefore, Mr. Buchbinder's proposed language in Paragraph 6 of the Rider is unacceptable to Mr. Natanzon as it relates to this issue.

It should be clear, however, that Mr. Natanzon is not attempting to walk away from ERN's agreement to pay $2,000,000 to Mr. Buchbinder. He has advised Mr. Buchbinder that ERN would remit the $80,000 after the 90-day period on a continuous monthly basis to satisfy the $2,000,000 debt. Moreover, ERN would make available $80,000 of portfolio per month for immediate sale.

4.    The fourth drafting issue is whether Mr. Natanzon should be compelled to waive his right to trial by jury in any future litigation between the parties. There is no basis for Mr. Buchbinder to insist that such a provision be included in the final agreement. In fact, Mr. Goldstein quite properly concedes in his letter that the issue of waiver of jury trial was never part of the MOU. The parties never discussed the issue when they negotiated the MOU.

Finally, there is a complaint that Mr. Natanzon has failed to provide certain financial information to Mr. Buchbinder. We are advised that Mr. Natanzon has already or promptly will provide the financial and Concord/CSP information called for in the MOU. He has offered to send a letter to Concord authorizing them to send the requested information directly to Mr. Buchbinder.



SHAPIRO
SHER
GUINOT &
SANDLER

The Honorable Marvin J. Garbis
August 30, 2002
Page 4


        In conclusion, we suggest that we arrange a time for counsel to meet with the Court to decide the most efficient way to resolve these differences.  We do not believe that the disputes require testimony in Court.

                            Respectfully yours,

                            Paul Mark Sandler

PMS:mst

cc:    David B. Goldstein, Esquire (via hand delivery)