# Exhibit 5

Case 1:03-cv-00168-MJG   Document 18-6   Filed 09/08/2003   Page 1 of 3

# DANEKER McINTIRE SCHUMM PRINCE GOLDSTEIN MANNING & WIDMANN, P.C.

One North Charles Street, Suite 2450
Baltimore, Maryland 21201
(410) 649-4747
Facsimile (410) 649-4758

*David B. Goldstein*
*Direct Dial (410) 649-4755*
*Brooke Schumm, III*
*Direct Dial (410) 649-4761*

September 9, 2002

Via Hand Delivery

The Honorable Marvin J. Garbis
United States District Judge
United States District Court for
　　the District of Maryland
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

　　　　　　RE:　Michelle Trading Corporation v. Rony Natanzon,
　　　　　　　　　Civil Action No.: MJG-02-1868

Dear Judge Garbis:

　　　This letter is a follow up letter to our August 26 letter submitting to Your Honor the parties' settlement dispute pursuant to the agreed dispute resolution procedures in the MOU. We write this letter to bring to the attention of Your Honor and the Natanzon parties evidence of direct financial harm occasioned by Mr. Natanzon's reneging on his agreement for the immediate sale of the Concord and CPS portfolio and his refusal to provide to Mr. Buchbinder any financial information regarding the portfolio for purposes of the sale. We have attached an affidavit from Mr. Buchbinder made on personal knowledge verifying the facts and statements made in this letter.

　　　As we advised Your Honor in our August 26 letter, Mr. Buchbinder made a telephone call at the settlement table on July 12 in order to determine that he would be able to sell the Concord and CPS portfolio before accepting Mr. Natanzon's offer of the immediate sale of the portfolio as part of ERN's agreement to make a $2 million settlement payment. In that telephone call, Mr. Buchbinder understood that he would be able to sell the portfolio on the basis of a multiple of 24 times the portfolio's monthly residual income stream. The more customary price at that time was a multiple of about 18 times residuals, but because of Mr. Buchbinder's business relationship with the purchaser, Concord, and its president, Mr. Labry, Mr. Buchbinder

# DANEKER McINTIRE SCHUMM PRINCE GOLDSTEIN MANNING & WIDMANN, P.C.

September 9, 2002
Page 2

understood that he would be able to obtain the highest and best price of 24 times residuals. In his affidavit, Mr. Buchbinder explains why only he, and not Mr. Natanzon, could obtain this highest and best price (*e.g.*, at paragraphs 3, 4, and 5), and why Mr. Natanzon understood that the sale could be completed quickly once Mr. Natanzon disclosed the financial details of the portfolio and its residuals (*e.g.*, at paragraph 6). However, this pricing differential was tied to Concord's financials, including its stock price, which at the time was about 30. The stock price is now trading at about 14, around 50% less than when the deal was being offered on July 12 (see attached Monday, September 9 price quote). As a result, the July 12 price multiple of 24 times monthly residuals can now no longer be achieved. The result of Mr. Natanzon's failure to honor his bargain will therefore result in a dramatic loss to the Buchbinder parties in the value of the portfolio sale price.

After our August 26 letter, contemporaneous with Mr. Sandler's August 30 response, ERN for the first time provided its July bank statements showing that the company is still out of cash and running negative balances (see attached ERN July bank statements [ERN's 98-page August 30 fax is complete except for the payroll attachments; no August bank statements were attached]). Given ERN's cash situation, based on its own bank statements, it is virtually certain that ERN can neither pay the $2 million settlement payment nor can it obtain the financing from elsewhere to finance the $2 million settlement payment. Given these financials, it is also completely transparent that ERN has never had any reasonable chance of paying or financing the settlement payment. In fact, we believe that ERN is using the promised residuals to pay its current bills rather than direct them to be paid to Baron, as agreed.

Despite the Friday, September 6 deadline, ERN again failed to provide us with its weekly check register and its August bank statements (MOU, paragraph 15). Despite the representation made in Mr. Sandler's August 30 letter to Your Honor, his client has still failed to provide us with any information about the portfolio or its residuals (Mr. Sandler's August 30 letter, at the bottom of page 3). Therefore, we are unable at present to provide Your Honor with any additional information about ERN's financial situation.

Nevertheless, we submit, based on the presently available evidence, that Mr. Natanzon's refusal to provide any information about the portfolio or to pay over the residual income since July 12 or to permit the sale to go forward was never based on any reasonable expectation of financing the $2 million payment. His concealment of ERN's bank statements until after our August 26 submission avoided discovery of ERN's complete lack of any foundation to its argument during negotiations that it could finance or pay the $2 million during the 90 day period. Indeed, it is likely that Mr. Natanzon has never received any favorable indication from any financial institution committing to loan ERN the money to make the payment nor is it likely that