```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

BARON FINANCIAL CORPORATION      *

          Plaintiff              *

          vs.                    * CIVIL ACTION NO. MJG-03-168

ERN, LLC                         *

          Defendant              *

*     *     *     *     *     *     *     *     *
```

MEMORANDUM AND ORDER

The Court has before it Plaintiff's Motion for Summary Judgment [Paper 18], Defendant's Motion for Partial Summary Judgment [Paper 16], and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the argument of counsel.

I. PROCEDURAL POSTURE

The parties present cross motions for summary judgment. Neither side suggests that there is any need for trial of factual issues with regard to contract interpretation. Accordingly, the Court can, in effect, decide the case presented on the current record.

II.  DISCUSSION

On July 12, 2002, Plaintiff Baron Financial Corporation ("Baron") and Defendant ERN, LLC ("ERN")[1] settled certain pending litigation[2] and executed a Memorandum of Understanding Re: Settlement Agreement on that date.  Essentially, the settlement provided, among other things, for ERN to pay Baron $2,000,000 within 90 days.  As security for this obligation, ERN assigned "certain general intangibles, namely the prospective residual payments [receivable][3] due from Concord and CPS, and the underlying portfolio of accounts to Michelle[4] [Trading Corp.]" with Michelle authorized to sell the accounts on behalf of ERN.  Upon the sale of accounts, the proceeds were to be "delivered upon closing to Michelle" and applied to the $2,000,000 obligation.  The Memorandum of Understanding provided, also, that "all [receivable] payments shall be delivered directly to Michelle, and applied as a credit against the $2,000,000 due . . . ."

---

[1] Together with others not parties to the instant case.

[2] <u>Michelle Trading v. Natanzon</u>, MJG-02-1868 (D. Md.).

[3] The word "residual" was used as a label for the receivables at issue solely to distinguish these receivables from other receivables which were subject to a lender's security interest.

[4] For present purposes, Baron and Michelle can be considered to be the same entity.

In 2002, ERN processed certain merchants' transactions (i.e., verified and approved sales via electronic payment) for a credit card payment system ("CPS") and a bank ("EFS").  CPS and EFS paid ERN a portion of their total fees on a monthly basis.  Accordingly, on July 16, 2002, ERN received $57,044.44 of receivable payments for transactions processed in June of 2002.  Similarly, on July 29, 2002, ERN received receivable payments of $27,258.77 from CPS for transactions processed in June of 2002.  In August of 2002, ERN received receivable payments from EFS and CPS which were generated by merchants' transactions processed in July of 2002, some before, and some after, the July 12, 2002 settlement date.

The question here presented is whether the amount of receivable payments, which ERN was obligated to "deliver directly" to Michelle was:

- All payments for receivables <u>received</u> by ERN after July 12, 2002, or

- All payments for receivables <u>earned</u> by ERN after July 12, 2002.

The question must be resolved in light of the Court's previous decision interpreting the settlement agreement at issue.

By Letter Order of September 13, 2002 in <u>Michelle Trading v. Natanzon</u>, MJG-02-1868, the Court - with the agreement of

the parties - issued a succinct decision resolving certain conflicts regarding interpretation of the settlement agreement.  As pertinent hereto, the Court held:

    1.    The $2,000,000 obligation was due on July 12, 2002.

    2.    This obligation is payable only out of the assigned accounts and prospective residuals without recourse to the Natanzon Group.

    3.    The agreement required "the immediate, July 12, 2002, assignment of accounts and prospective (after July 12, 2002) residual payments[5] on said accounts."

    4.    "[A]ny residual payments received after July 12, 2002 with respect to any assigned accounts were to be 'delivered directly' to Michelle."

    5.    The Natanzon Group had to pay all such residual payments with 6% simple interest from the date of receipt of payment.

The September 13, 2002 Letter Order did not address expressly the question now raised, that is whether the phrase "residual payments received after July 12, 2002" refers to all received after the specified date or only those that were earned after that date.

The Court concludes that in the September 12, 2002 decision statement that "any [receivable] payments received after July 12, 2002 . . . ," the word "any" means what it

---

[5] The parties agree that there is a "cap" of $80,000 per month of residuals.  See Pl. Motion at 6 ¶ 13 and Def. Memorandum at third (unnumbered) page fn.1.

says. That is each and every one of such payments received and not just those post July 12, 2002 payments for transactions processed after settlement. Moreover, the term "assigned accounts" refers to the relationships with the merchants whose transactions were verified.

In the Rider to Memorandum of Understanding Re Settlement Agreement, ERN granted Baron a security interest in, among other things, merchant accounts plus "any and all rights to <u>all current and future residual payments</u>" therefrom. Rider, ¶ 5 (emphasis added). The terms "current" and "future" residual payments must be given meaning. The term "current residual" is most sensibly interpreted to mean one that was existent and due currently, that is a receivable for work done prior to the settlement. The term "future residual" is most sensibly interpreted to refer to a receivable that would be created in the future, that is with regard to work done after the settlement.

Accordingly, there was an express recognition that on July 12, 2002, Baron was given a security interest in receivables due for transactions processed prior to the settlement as well as in receivables for transactions that would be processed after the settlement. There is nothing to indicate that the parties intended to exclude current receivables from the agreement that residual payments received

5

after July 12, 2002 with respect to any assigned accounts were to be "delivered directly" to Michelle.  Indeed, it would not be sensible with one hand to give Baron (Michelle) a security interest in current receivables and with the other hand to render the security interest meaningless by allowing ERN to retain the secured proceeds free of lien.

The Defendant seeks to reargue the issues resolved by the September 13, 2002 Memorandum and Order.  It cannot do so by virtue of the agreement that the said decision would be final "with all objections or rights of appeal waived."  Memorandum of Understanding, page 3, ¶ 16.  Even if the matter could be reopened, Defendant's position is no more meritorious now than it was in September of 2002.

### III. <u>CONCLUSION</u>

For the foregoing reasons:

1.  Plaintiff's Motion for Summary Judgment [Paper 18] is GRANTED.

2.  Defendant's Motion for Partial Summary Judgment [Paper 16] is DENIED.

3.  By March 22, 2004, Plaintiff shall provide an agreed or proposed Judgement Order including a computation of prejudgment interest as well as

any agreement or motion regarding any legal fee award.

SO ORDERED, on **Friday, February 27, 2004**.

              /  s  /
          Marvin J. Garbis
     United States District Judge